IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CHARLES MONTAGUE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CORRECTIONS CORPORATION OF ) <br> AMERICA, et al., ) <br> ) <br> ) <br> Defendants. ) | Case No. 3:10-cv-0443 <br><br> Judge Campbell/Brown <br> **Jury Demand** |

To: The Honorable Todd J. Campbell, Chief Judge

## REPORT AND RECOMMENDATION

Presently pending before the Magistrate Judge are Motions to Dismiss or for Summary Judgment by Defendants Reuben Hodge and the Tennessee Department of Correction (the "TDOT Defendants") and by Defendants Just M. Clark, Corrections Corporation of America, Cherry Lindamood, Joe Patterson, Daniel Pritchard, Tanya Rich, and Randall Runions (the "CCA Defendants"). (Docket Entries 134, 135, 138-146). Plaintiff has filed Responses to these Motions. (Docket Entries 157, 158, 159, 163, 164, 166). The TDOT Defendants have filed, at the Magistrate Judge's request, a supplement to their first Motion to Dismiss. (Docket Entry 162). The CCA Defendants have filed a Reply. (Docket Entry 165). For the reasons set forth below, the Magistrate Judge **RECOMMENDS** Defendants' Motions be **GRANTED** and this case be **DISMISSED.**

I. INTRODUCTION AND BACKGROUND

1

Plaintiff, an inmate of the Tennessee Department of Correction formerly housed at South Central Correctional Center ("SCCC"), brings this civil rights action based on a number of allegations. Plaintiff alleges Defendants violated his rights to due process and equal protection under the First, Eighth and Fourteenth Amendments to the United States Constitution, as well as 18 U.S.C. §§ 1702, 1708 and 1709 by obstructing his receipt of mail and by stealing his mail. He also alleges Defendants violated his right to the free exercise of religion and equal protection arising out of the First, Eighth and Fourteenth Amendments, as well as 42 U.S.C. § 2000cc, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") by disallowing certain aspects of his Muslim religious celebrations. Plaintiff alleges his rights under the Eighth and Fourteenth Amendments, Article I § 32 of the Tennessee Constitution, and 18 U.S.C. § 3626 were violated by the physical conditions of his confinement. Finally, Plaintiff alleges Defendants denied him due process when confiscating Plaintiff's typewriter.

Plaintiff's complaint consists of four claims. First, he alleges Defendants deprived him of property that was mailed to him, a Christmas food package, without an adequate grievance procedure. This allegation was dropped in his Amended Complaint. (Docket Entry 60). Second, he alleges the conditions of his cell amount to cruel and unusual punishment due to black mold, rusty bunk beds, rusty window frames, deteriorating ceiling material, cold cells, and unsanitary food trays. He claims these conditions have made him ill. Third, Plaintiff alleges Defendants failed to accommodate his religious tenets by limiting foods that could be ordered for a religious feast and by not allowing Plaintiff and other inmates to pool money for religious feasts. Finally, Plaintiff claims Defendants denied him of his property, a typewriter, without due process.

Plaintiff has requested a temporary restraining order twice in this action and has been denied both times. (Docket Entries 29, 47, 49, 85, 93, 111, 124).

## II. STATEMENT OF UNDISPUTED FACTS

The CCA Defendants have filed a Statement of Undisputed Facts. (Docket Entry 143). Plaintiff has filed a Response. (Docket Entries 164). Where appropriate, the Magistrate Judge has indicated Plaintiff's disagreement with the statement.

1. The South Central Correctional Center (SCCC) is a correctional facility owned and operated by Corrections Corporation of America ("CCA"). Plaintiff disputes this and argues that SCCC is owned by the State of Tennessee and is managed/leased by CCA.

2. At all times relevant to this action, Charles Montague was a Tennessee Department of Correction inmate housed at SCCC.

3. Cherry Lindamood is the Warden at SCCC.

4. Angela Steadman is the Health Services Administrator at SCCC.

5. Randall Runions is the Chaplin at SCCC.

6. Cherry Lindamood is intimately familiar with the SCCC's grievance policy and applicable procedures.

7. All inmate mail at the SCCC is governed by TDOC Policy 507.02.

8. In addition to governing the collection, distribution, and inspection of mail, TDOC Policy 507.02 also provides a specific procedure for inmates to appeal any rejection of an item of mail in violation of part VI(C)(3) of this policy. Plaintiff asserts this process is useless because the mail is not held until the appeal is final.

9. The Assistant Commissioner, upon receipt of a timely appeal, will then review the item of mail at issue and the warden's reasons for rejecting it and determine whether the rejection was warranted.

10. TDOC Policy 501.01, adopted as SCCC Policy 14.07, provides the standard procedure for the expression and resolution of inmate complaints and sets forth specific exceptions to this procedure which are deemed inappropriate to the grievance procedure.

11. TDOC Policy 501.01 VI(G)(10) provides that the grievance process is inappropriate for "[m]ail rejection, which may be appealed as described in Policy #507.02."

12. According to TDOC and SCCC policy, the filing of a grievance is not the proper avenue of redress available to Plaintiff to appeal the rejection of his mail. In fact, inmates are specifically prohibited from filing grievances regarding this issue.

13. As Health Services Administrator, Angela Steadman is not involved in the day-to-day medical treatment of inmates. Rather, her position is supervising of the health services provided to inmates at the facility and ensuring that proper and appropriate health care is provided to inmates at the facility.

14. Angela Steadman would have had knowledge of any consistent or serious medical complaint of the inmates as it relates to symptoms resulting from the exposure of rust, paint, or mold.

15. Angela Steadman searched Plaintiff's medical file and found no medical requests concerning any medical need that he may have had resulting from any exposure to rust, paint, or mold.

16. To control the moisture, SCCC employees and inmates were asked to immediately report leaks and moisture. Plaintiff states he was not informed of this, nor have any memoranda been posted in the units in which he has resided.

17. There is designated staff at SCCC who are responsible for regular cleaning of any identified areas of concern; these staff members are licensed as Commercial Cleaners in the State of Tennessee.

18. Several cells with moisture issues were identified and taken off line.

19. SCCC does maintain policies and procedures which establish inmate's rights, and one of these established rights is the right to freedom of religious affiliation and voluntary religious worship.

20. Religious programs at SCCC are governed by Policy 118.01 which states that inmates may voluntarily participate in religious activities and that the facility staff will monitor those religious activities.

21. Policy 118.01 VI(D)(2) states that inmates will not be placed in a position of religious leadership or authority over other inmates.

22. The purpose of SCCC's policy 118.01 VI(D)(2) is to protect the inmates, staff, and visitors as well as maintain institutional safety, security, and order which could be compromised by one inmate having control or authority over another inmate.

23. As a direct result of the Religious Programs policy prohibiting inmates from supervising, controlling, or exerting authority over other inmates, SCCC requires that each religion have an outside volunteer to lead their formal religious services.

24. In the interest of facility safety and security, outside volunteers must apply and complete a screening process prior to being allowed inside the facility to lead a formal religious ceremony.

25. As Chaplin, Randall Runions receives all applications from volunteers wanting to lead a religious group, and he reviews and screens these applications in good faith and without discriminating based on race, color, national origin, religion, or political affiliation.

26. Emad Fattah applied to be a religious volunteer, was accepted, and has led the formal Muslim religious services at SCCC in the past.

27. The Emad Fattah-led services were available to all inmates who made the choice to attend and were scheduled by the jail in conjunction with the availability of Emad Fatah.

28. SCCC makes accommodations for Emad Fattah whenever he requests a time to hold a service, and to Defendant Runion's knowledge, has never been denied the opportunity to hold a Muslim service at SCCC.

29. SCCC is not required to provide Plaintiff with an Islamic Freeworld Sponsor.

30. SCCC cannot force anyone to be a Freeworld sponsor. Plaintiff disputes that SCCC has properly recruited sponsors.

31. Charles Montague was at no time prevented from gathering with other Muslims to discuss or participate in religious ceremonies as long as said gathering was done under the policies and procedures of SCCC. Plaintiff claims the burden placed on the exercise of his faith by the policies and procedures was subtantial.

32. Charles Montague's religious organization meets twice a week at SCCC, every Tuesday and Friday.

33. No other Freeworld Islamic volunteer has contacted Randall Runions inquiring as to the process of applying to be a volunteer religious service leader for the Muslim religion, and to Defendant Runion's knowledge, no one has been denied the opportunity to apply to be a volunteer to lead form Muslim services at the SCCC.

34. No applicant desiring to volunteer to lead the Muslim services at SCCC has been denied.

35. There is a legitimate penological interest in not allowing another inmate to take a leadership role over formal group services for other inmates, which would be allowing an inmate to exercise power over other inmates which is not allowed in a prison setting.

36. Charles Montague made numerous requests to SCCC as it related to his religious beliefs, including requests as to specific times of prayer and special meal and fasting accommodations.

37. SCCC accommodated Charles Montague's access to denominational religious services and allowed a choice of prayer services that may better suit his preferences.

38. SCCC policy 502.05 prevents inmates from selling, borrowing, or lending goods, whether monies, services, or property, to other inmates or to any free world person.

39. An inmate entering into a financial obligation with another inmate is not allowed without the consent of the warden.

40. The purpose of SCCC 502.05 is to maintain a safe and secure environment for inmates, SCCC staff, and visitors.

41. There is a legitimate penological interest in not allowing an inmate to become indebted to other inmates, which would be allowing an inmate to exercise power or control over other inmates which is not allowed in a prison setting.

42. An inmate being indebted to another has the potential to create conflict and tension that could jeopardize the safety and security of the facility and its inmates, staff, and visitors as well as jeopardize the order of the facility.

## II.  LEGAL DISCUSSION

**A. Standard of Review for a Motion to Dismiss**

An action may be dismissed if the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In deciding a Rule 12(b)(6) motion, a district court must view the complaint in the light most favorable to the plaintiff and take all well-pleaded factual allegations as true, as the moving party has the burden of proving that no claim exists.  *Erickson v. Pardus*, 550 U.S. 89 (2007).  Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief.  Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, although a complaint is to be liberally construed, the District Court need not accept a "bare assertion or legal conclusions."  *Id.  See also Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).  In other words, a court is not required to accept as true a "legal conclusion couched as a factual allegation."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  When viewing the complaint under the above standards, to survive a motion to dismiss, a complaint must contain (1) "enough facts to state a claim to relief that is plausible," (2) more than "a formulaic recitation

of a cause of action's elements," and (3) allegations that suggest a "right to relief above a speculative level." *Twombly*, 550 U.S. at 555-56.

### B. Standard of Review for a Motion for Summary Judgment

Summary judgment is appropriate if there is "no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The main inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After sufficient time for discovery and upon motion, Fed. R. Civ. P. 56(c) mandates summary judgment against a party who fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

When deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006). In order to survive summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250; Fed. R. Civ. P. 56(e). Thus, even if the nonmovant produces some evidence, the production will not be sufficient to defeat summary judgment so long as no reasonable jury could reach a finding on that issue in favor of the non-moving party. *Anderson*, 477 U.S. at 248. The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." Fed. R. Civ. P.

56(e)(2). If the non-moving party fails to do so, then summary judgment, if appropriate, should be granted for the moving party. *Id.*

**C. TDOC Defendants' Motion**

In their Memorandum, the TDOC Defendants argue that Plaintiff's entire action against them should be dismissed because the TDOC Defendants are immune under 42 U.S.C. § 1983.[1] A state is not a "person" in an action pursuant to 28 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989).[2] In addition, the State of Tennessee is immune from suits for money damages in actions brought under 42 U.S.C. § 1983. *See Am. Civil Liberties Union v. Tennessee*, 496 F. Supp. 218, 220 (M.D. Tenn. 1980). As Plaintiff's suit is for money damages, the State is immune.

As an employee of TDOC being sued in his official capacity as Assistant Commissioner, Reuben Hodge is similarly immune from suit. *See Will*, 491 U.S. at 68. In addition, as the TDOC Defendants point out, Hodge was apparently sued based on his position and right to control his employees. There is no indication from Plaintiff's Amended Complaint that Defendant Hodge condoned or acquiesced in the alleged constitutional violations. Section 1983 liability may not be premised on respondeat superior. *See Taylor v. Michigan Dept. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). For these reasons, the Magistrate Judge believes Plaintiff's claims against all TDOC Defendants should be dismissed.

---

[1] The TDOC Defendants also raise other grounds for dismissing Plaintiff's suit, but, because the Magistrate Judge is recommending dismissal based on sovereign immunity, they need not be addressed.

[2] As state agencies or instrumentalities, TDOC is protected from suit under the Eleventh Amendment.

In their first Motion to Dismiss and in a supplemental filing, the TDOC Defendants also argued that Plaintiff's *in forma pauperis* status should be revoked because Plaintiff has "three strikes" under 28 U.S.C. § 1915(g). (Docket Entries 134, 135, 162). After the Magistrate Judge questioned whether three of Plaintiff's previously-filed cases had been "dismissed on the grounds that [they were] frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted," as required by § 1915(g), the TDOC Defendants filed their Supplement. (Docket Entry 162). The TDOC Defendants claim that *Wilson v. Yaklich*, 148 F.3d 596, 604 (6th Cir. 1998) provides that "any case dismissed prior to the enactment of the PLRA qualifies as a 'strike'" and, therefore, Plaintiff's prior four cases, only two of which were dismissed as frivolous, all count as strikes. (Docket Entry 162, p. 2). The Magistrate Judge believes the TDOC Defendants have misread *Wilson*. The Sixth Circuit in that case decided the PLRA was retroactive, and prior dismissals *would* qualify as strikes - so long as they would qualify as strikes under § 1915(g) as enacted. *Wilson*, 148 F.3d at 604. This does not mean that *any* dismissal prior to the enactment of the PLRA is a strike. It appears that Plaintiff has had two cases dismissed as frivolous and several others dismissed for various reasons, including at the summary judgment stage.[3] Other than the two frivolous claims, it does not appear Plaintiff has had any other cases dismissed because the claims were "frivolous, malicious, or fail[ed] to state a claim upon which relief may be granted." Therefore, the Magistrate Judge does not believe Plaintiff's *in forma pauperis* status should be revoked.

---

[3] These cases and their dispositions are detailed in the TDOT Defendants' Memorandum accompanying their First Motion to Dismiss. (Docket Entry 135).

**D. CCA Defendants' Motion**

The CCA Defendants have moved to dismiss Plaintiff's claims against them for failure to state a claim and/or to grant them summary judgment. The CCA Defendants apparently concede that Plaintiff has alleged causes of action against the individual defendants (Cherry Lindamood, Justin Clark, Randall Runions, Joe Patterson, Tanya Rich, and Daniel Pritchard) in both their official and individual capacities.

Defendants CCA, Lindamood, and Pritchard allege that Plaintiff's complaints against them are based entirely on *respondeat superior* or vicarious liability, which is not a basis for liability under 28 U.S.C. § 1983. As a private corporation exercising powers that are traditionally reserved to the state, CCA is a person acting under color of law for purposes of a § 1983 action. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Like a municipality, CCA may be liable for the actions of its employees only if there is a direct causal link between a CCA policy or custom and the alleged constitutional tort. *See Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997); *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Here, Plaintiff has not alleged a CCA policy or custom that caused his harm. Plaintiff does not dispute that CCA has certain policies in place to allow him to exercise his constitutional rights while preserving security in the prison. *See infra* II. 19, 22, 24, 31, 35, 41. Therefore, the Magistrate Judge believes Plaintiff's claims against CCA should be dismissed.

In his Amended Complaint, Plaintiff alleges that Defendants Lindamood and Pritchard, the Warden and Assistant Warden, were policy makers who failed to provide him with adequate remedies for his claims and were indifferent to the conditions of his confinement. (Docket Entry 60). In order to find a supervisor liable, a plaintiff must allege that the supervisors condoned,

encouraged or knowingly acquiesced in the alleged misconduct. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). The Magistrate Judge believes Plaintiff has alleged Defendants Lindamood and Pritchard condoned or acquiesced in the alleged constitutional violations, including the conditions of Plaintiff's confinement and his religious accommodations. For the reasons discussed below, however, the Magistrate Judge believes Plaintiff's claims against these two defendants should nevertheless be dismissed.

With the other individual CCA Defendants, Lindamood and Pritchard present several arguments for dismissal of Plaintiff's claims against them. As an initial matter, Plaintiff's Amended Complaint specifically dropped his claim regarding the rejection of his mail, and Plaintiff reiterates this in his Response. (Docket Entries 60, 163). Therefore, the remaining claims against the CCA Defendants are: (1) Plaintiff's First and Fourteenth Amendment claims regarding the deprivation of Plaintiff's property in the form of a mailed holiday food package; (2) the Plaintiff's Eighth Amendment claim alleging unlawful conditions of confinement; (3) Plaintiff's First and Fourteenth Amendment claims alleging denial of religious accommodations; and (4) Plaintiff's First and Fourteenth Amendment claims alleging the CCA Defendants are depriving him of his property. For the reasons set forth below, the Magistrate Judge believes these claims should be dismissed.

Plaintiff first claims his rights under the First and Fourteenth Amendments have been violated by the CCA Defendants either stealing or misplacing his holiday food package in 2009. The CCA Defendants argue that Plaintiff has not exhausted his administrative remedies with regard to this claim. In order to meet the exhaustion requirement in the Prison Litigation Reform

13

Act ("PLRA"), Plaintiff must have exhausted all remedies available to him. *See* 42 U.S.C. § 1997e. Plaintiff has not disputed that the receipt of inmate mail is subject to TDOC Policy 507.02, which provides a specific procedure for inmates to appeal any rejection of an item of mail. Plaintiff alleges in his Amended Complaint that he filed an inmate grievance under TDOC Policy 501.01 regarding this package. (Docket Entry 60). However, it is undisputed that TDOC Policy 501.01 provides that the grievance process is inappropriate for mail rejection. *See infra* II. 11. Plaintiff's only avenue for complaint is the procedure outlined in TDOC Policy 507.02, which he did not follow. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). Even though Plaintiff apparently filed a timely grievance for his complaint, the rejection of mail items is not covered by the grievance process, and Plaintiff has therefore not exhausted his administrative remedies, as required by the PLRA. *See Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009) ("[A] prisoner cannot satisfy the PLRA exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance."). Therefore, Plaintiff's first claim should be dismissed.

Plaintiff claims that his rights under the Eighth Amendment have been violated due to unlawful conditions of confinement at SCCC. The CCA Defendants argue that these claims are moot due to Plaintiff's transfer to the Northeast Correctional Complex on April 6, 2011.[4] (Docket Entry 139-7). The Magistrate Judge agrees, but even if the claims were not moot, they

---

[4] The CCA Defendants provide almost no briefing on this point, but the TDOC Defendants have provided a thorough analysis in their brief. (Docket Entry 140).

should be dismissed. Plaintiff has not shown that there was an "'unnecessary and wanton infliction of pain.'" *Ingraham v. Wright*, 430 U.S. 651, 670 (1977); *Talal v. White*, 403 F.3d 423, 426 (6th Cir. 2005). He has alleged only that he suffered from minor medical problems, including a skin rash and cold-like symptoms. (Docket Entry 60). This is simply not enough to give rise to a constitutional violation.

Plaintiff also claims that his First and Fourteenth Amendment rights were violated because the CCA Defendants would not allow Muslim[5] prisoners to order outside food and to pool their money to celebrate Eid ul-Fitr and Eid Adha. In general, a prison regulation that limits or impinges inmates' constitutional rights "is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). Plaintiff also argues that the CCA Defendants' conduct violated the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C.A. § 2000cc-1(a), which bars any "substantial burden on the religious exercise of a person residing in or confined to an institution," unless that burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C.A. § 2000cc1(a). Plaintiff bears the burden of alleging that "the law (including a regulation) or government practice that is challenged by the claim substantially burdens the plaintiff's exercise of religion." 42 U.S.C.A. § 2000cc-2(b). *See also Living Water Church of God v. Charter Twp. Meridian*, 258 Fed. Appx. 729 (6th Cir. 2007).

---

[5] In their filings, attorneys for the CCA Defendants have routinely misspelled "Muslim" as "Muslin." This is particularly egregious given Plaintiff's allegations that his rights to practice his religion were violated.

Plaintiff has admitted that SCCC's policies regarding religion have legitimate penological interests. *See infra* II. 22, 35, 41. The Magistrate Judge believes these admissions negate any constitutional claim plaintiff has regarding bringing in outside food and pooling money. There is also no genuine issue of material fact that a substantial burden was placed on Plaintiff's religious exercise. Plaintiff admits he was able to participate in religious ceremonies with other Muslims under the leadership of Emad Fattah and was apparently able to celebrate his religious feasts. Plaintiff has not shown that the restriction on the number of special items to be served at the Eid ul-Fitr and Eid Adha banquets substantially burdened Plaintiff's exercise of his religion. Neither has he shown that disallowing the pooling of funds, such that inmates that cannot afford to pay for their meal may not participate, substantially burdens *Plaintiff's* exercise of his religion. As such, the Magistrate Judge believes Plaintiff's RLUIPA claims should be dismissed.

Finally, Plaintiff claims the CCA Defendants violated his rights under the First and Fourteenth Amendments by confiscating a typewriter belonging to him and failing to return it. The CCA Defendants apparently are seeking to dismiss this claim for failure to state a claim, because there are no undisputed facts regarding these issues. In his response to the TDOT Defendants' Motion to Dismiss, Plaintiff admits his typewriter was confiscated because it was used to conceal a homemade knife. (Docket Entry 166). In *Parratt v. Taylor*, the Supreme Court held that, in situations where it is impracticable or impossible to provide an opportunity to be heard before the initial deprivation of a property interest, the requirements of due process are met if the state provides an adequate post-deprivation remedy. 451 U.S. 527, 537-43 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). In *Hudson v. Palmer*, 468 U.S.

517 (1984), the Supreme Court held that *Parratt* applies to intentional, as well as negligent, deprivations of property.

Plaintiff's claim here is similar to the plaintiff prisoner's claim in *Smith v. Rose*, 760 F.2d 102, 105-06 (6th Cir. 1985). In *Smith*, the prisoner complained that his due process rights were violated by seizure and donation of his property while he was in segregation. *See id*. The Sixth Circuit denied the plaintiff's claim, holding that the Tennessee Claims Commission provided an adequate state remedy to provide the plaintiff with compensation for the loss of his property.[6] *Smith*, 760 F.2d at 106. The Magistrate Judge sees no reason why Plaintiff would not have an adequate remedy in the Tennessee Claims Commission for any property deprivation in this case. Therefore, Plaintiff's claim should be dismissed.

The CCA Defendants make the somewhat creative argument that Plaintiff's claims are subject to a 30-day statute of limitations under Tenn. Code Ann. § 41-21-806(b). This statute, passed in 1996, provides for a 30-day statute of limitations for claims that may be grieved by prisoners filed *in forma pauperis* in state court. Tenn. Code Ann. § 41-21-802 provides that this section "applies only to a claim brought by an inmate in general sessions or a trial level court of record in which an affidavit of inability to pay costs is filed with the claim by the inmate." This section makes it clear that the statute of limitations is applicable to *state* cases, not to § 1983 claims filed in federal court. Moreover, it is well-settled in the Sixth Circuit that the statute of limitations for § 1983 claims filed in Tennessee federal courts is one year. *See*, *e.g.*, *Irick v. Ray*,

---

[6] The *Smith* court's analysis is under the precursor to Tenn. Code Ann. §§ 9-8-301 *et seq.*, which currently provide authorization for the Tennessee Claims Commission. The purpose of the Claims Commission appears unchanged.

628 F.3d 787, 789 (6th Cir. 2010); *Wyatt v. Cumberland Co., Tenn.*, 172 F.3d 51, *1 (6th Cir. 1998). The Magistrate Judge is bound by established Sixth Circuit precedent in this instance.

III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** Defendants' Motions to Dismiss and/or for Summary Judgment be **GRANTED** and this case be **DISMISSED**. In the event this case is not dismissed, the Magistrate Judge does not believe it will be ready for trial on the current trial date, due to the number of outstanding discovery disputes.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days from receipt of this Report and Recommendation within which to file with the District Court any written objections to the proposed findings and recommendations made herein. Any party opposing shall have fourteen (14) days from receipt of any objections filed regarding this Report within which to file a response to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation may constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140, *reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 8th day of August, 2011.

/S/ Joe B. Brown
Joe B. Brown
United States Magistrate Judge